IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
August 14, 2001 Session

## BEQUIR YMERLI POTKA, FATMIR AGOLLI, STAVRI POPA & EPISON PULAHA v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County
No. 2000-C-1348     Steve Dozier, Judge**

---

**No. M2000-02305-CCA-R9-CO - Filed January 18, 2002**

---

We granted the defendants' application for interlocutory appeal, *see* Tenn. R. App. P. 9, to review the trial court's disqualification of defense counsel based upon conflicting interests in counsel's representation of all four defendants. Because we conclude that the lower court acted within its discretion in disqualifying counsel from multiple representation, we affirm.

**Tenn. R. App. P. 9; Judgment of the Criminal Court Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which DAVID H. WELLES and JOE G. RILEY, JJ., joined.

Mark C. Scruggs, Nashville, Tennessee, for the Appellants, Bequir Ymerli Potka, Fatmir Agolli, Stavri Popa, and Epison Pulaha.

Paul G. Summers, Attorney General & Reporter; Jennifer Bledsoe, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Brian Holmgren, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

Fatmir Agolli, Bequir Potka, Stavri Popa and Epison Pulaha are charged with a variety of crimes apparently related to a barroom brawl. All four defendants are represented by one attorney, Mark C. Scruggs. On motion of the state, the trial court found that due to conflicting interests, the defendants should be required to retain separate counsel, thereby disqualifying Mr. Scruggs. The defendants maintain, as they did in the lower court, that they understand the potential for conflicting interests but, nevertheless, wish to be represented jointly by Mr. Scruggs.

In order to understand the conflict question, an explanation of the nature of the charges is pertinent. In indictment number 2000A463, returned March 24, 2000, Agolli and Potka were charged with four counts of aggravated assault, all four defendants were charged with one count of vandalism, and Potka was charged with one count of driving under the influence. This indictment

was before the court when it made its ruling disallowing joint representation. Subsequently, a superseding indictment was returned which charged each of the four defendants with four counts of aggravated assault and one count of vandalism and which charged Potka with one count of driving under the influence.

At the hearing on the motion to disqualify, defense counsel acknowledged that there was a "different plea offer for three of them as opposed to one." He further acknowledged that "the problem with it is . . . three who are not United States citizens could very well be deported." He stated this was the "holdup as far as that's concerned." Defense counsel stated he only talked to the defendants as a group, not individually, and advised them they could get separate counsel who could negotiate with the district attorney. He said that "in all likelihood, I think that would probably involve some type of cooperation." Defense counsel stated all defendants wanted him to continue to represent them. As stated, the trial court granted the state's motion to disqualify defense counsel.

The defendants moved the court for reconsideration of its order requiring separate counsel for each defendant, and they moved in the alternative for permission to pursue an interlocutory appeal. *See* Tenn. R. App. P. 9 (appeal by permission of the trial and appellate courts). The lower court entered an order granting permission to pursue an interlocutory appeal. The defendants then filed an application for interlocutory appeal with this court, and the state did not oppose it. We granted the application. We have now received the briefs and oral arguments, and the case is before us for disposition.

The sole issue presented is whether the lower court erred in requiring that each of the four defendants be represented by separate attorneys. The defendants claim that there is no evidence of an actual conflict in this case, and in any event, they claim that they have each knowingly and intelligently consented to joint representation after disclosure of potential conflicts. The state counters with the argument that the trial court had the discretion to require separate counsel for each defendant upon a showing of either an actual conflict or a serious potential for conflicting interests. Furthermore, in the state's assessment, the trial court acted within that discretion in ruling that the potential conflicts in this case warranted separate counsel for each defendant.

We begin, of course, with the constitutional right to counsel, grounded in the Sixth Amendment. *See* U.S. Const. Amend. VI; *see also* Tenn. Const. art. I, § 9. The right to choose and be represented by counsel of one's choosing is "comprehended" by the Sixth Amendment, although the Amendment is targeted toward securing effective counsel for an accused, not unconditionally guaranteeing counsel of one's preference. *Wheat v. United States*, 486 U.S. 153, 159, 108 S. Ct. 1692, 1697 (1988); *see State v. Carruthers*, 35 S.W.3d 516, 546 (Tenn. 2000). Thus, the Sixth Amendment's right to counsel of choice is a qualified one, also referred to as a "presumption in favor of counsel of choice." *Wheat*, 486 U.S. at 159-60, 108 S. Ct. at 1697-98. This qualified right may be limited by the court if good cause exists. *State v. Parrott*, 919 S.W.2d 60, 61 (Tenn. Crim. App. 1995).

Moreover, the existence of *actual* conflicts of interests may be good cause to disqualify counsel which overcomes an accused's presumption favoring counsel of his choice. *Parrott*, 919 S.W.2d at 61. Cases in which one attorney represents multiple defendants charged relative to the same criminal episode present situations of special concern due to the possibility of such conflicting interests. *Wheat*, 486 U.S. at 159-60, 108 S. Ct. at 1697.

The more difficult question is whether the *potential* for conflicting interests may constitute good cause for disqualification of counsel in multiple representation situations. The law on this point is not entirely clear in Tennessee.

The United States Supreme Court has said that as a function of one of the "circumscribed" aspects of the Sixth Amendment, a trial court acts appropriately in inquiring into "possible" conflicting interests and determining whether separate counsel is warranted. *Wheat*, 486 U.S. at 159-160, 108 S. Ct. at 1697. The high court has recognized the inherent difficulties in making this determination, which necessarily must be made before trial and therefore without the benefit of hindsight. *Id.* at 163, 108 S. Ct. at 1699. Although the court recognized a presumption in favor of counsel of choice, it noted the presumption could be overcome not only by a showing of actual conflict but also by a showing of serious potential for conflict. *Id.* at 164, 108 S. Ct. at 1700. Tennessee decisions on point are more circumspect in authorizing a trial court to disqualify counsel based upon potential conflict. This court has held that "an actual conflict, rather than the mere possibility [of conflicting interests]" must be shown before disqualification is justified. *State v. Parrott*, 919 S.W.2d 60, 61 (Tenn. Crim. App. 1995); *State v. Oody*, 823 S.W.2d 554, 558 (Tenn. Crim. App. 1991). Under this line of authority, a court errs in basing a disqualification decision on "what might happen." *See Parrott*, 919 S.W.2d at 61.

When considering the rule of *Wheat* in contrast with that of *Parrott* and *Oody*, we believe that the soundness of the state court decisions is questionable in light of United States Supreme Court precedent allowing disqualification based upon serious potential for conflict. *See generally Wheat*, 486 U.S. at 159, 108 S. Ct. at 1697. *Oody* cites no authority for its proposition that only an actual conflict will support disqualification, and *Parrott* cites only *Oody*. There is no suggestion in either *Parrott* or *Oody* that the Tennessee Constitution provides a defendant more protection than the qualified right to counsel of choice contemplated by the Sixth Amendment to the United States Constitution.[1] *See generally Parrott*, 919 S.W.2d at 61-62; *Oody*, 823 S.W.2d at 558. On issues of federal constitutional law, we are bound to follow the rulings of the United States Supreme Court as the ultimate authority on federal constitutional questions.[2] *State v. Pendergrass*,

---

[1] The defendant in this case makes no such argument, either.

[2] Interestingly, our Rules of Criminal Procedure appear to require disqualification if it appears likely that a conflict will arise. Rule 44(c) provides,

> Whenever two or more defendants have been jointly charged pursuant to Rule 8(b) or have been joined for trial pursuant to Rule 13, and are represented by the same retained or assigned counsel or

(continued...)

-3-

13 S.W.3d 389, 397 (Tenn. Crim. App. 1999), *perm. app. denied* (Tenn. 2000). Thus, we conclude that, consistent with *Wheat,* a trial court has wide-ranging authority to disqualify counsel from representing multiple defendants if there is an actual conflict of interests or a serious potential for conflict. *See Wheat*, 486 U.S. at 159, 164 108 S. Ct. at 1697, 1700. Its exercise of that authority is subject to our review for abuse of discretion. *Clinard v. Blackwood*, 46 S.W.3d 177, 182 (Tenn. 2001).

We think it is clear in the case at bar that serious potential for conflicting interests existed. The defendants' attorney was in a situation in which he would be hard-pressed to pursue plea bargaining for the benefit of one or some of his clients given the detrimental impact on the remaining clients, particularly if such an agreement called for the pleading defendant to testify against his remaining co-defendants. In that it appears that three of the four defendants are not United States citizens and might face deportation if convicted, the situation in this regard is exacerbated. If the case goes to trial with one attorney representing all four defendants, one or more of the defendants may wish to testify to facts exculpatory to himself but placing the blame on one or more of the other defendants. Counsel would then be in the position of sponsoring testimony detrimental to the affected defendants, whom he also represents.

Jointly represented defendants may waive the right to conflict-free counsel. *See Wheat*, 486 U.S. at 161-62, 108 S. Ct. at 1698. However, the court may decline to accept the waiver and require individual representation of each defendant. *Id.* at 162, 108 S. Ct. at 1698. Because a trial court must make a disqualification decision before the trial takes place and therefore without the benefit of hindsight, it is afforded "substantial latitude" to refuse to accept waivers of conflicts

---

[2](...continued)

by retained or assigned counsel who are associated in the practice of law, the court shall promptly inquire with respect to such joint representation and shall personally advise each defendant of the right to the effective assistance of counsel, including separate representation. *Unless it appears that there is good cause to believe no conflict of interest is likely to arise*, the court shall take such measures as may be appropriate to protect each defendant's right to counsel.

Tenn. R. Crim. P. 44(c) (emphasis added).

At first blush, Rule 44(c) appears not to apply to this case at all. The text of that rule refers to cases joined pursuant to Rule 8(b), but not 8(c). Rule 8(b) discusses joinder of *offenses*. Rule 8(c) discusses joinder of *defendants*. Our Rule 44(c) was patterned after Federal Rule of Criminal Procedure 44(c). *See* Tenn. R. Crim. P. 44(c), Advisory Comm'n Cmts. (subsection 8(c) added "to conform the rule to the similar federal rule"). Federal Rule 44(c) refers to Federal Rule 8(b), the latter of which covers joinder of defendants. There is no Federal Rule 8(c). Clearly, Tennessee Rule 44(c) contemplates multiple representation problems which may arise due to joinder of *defendants. See* Tenn. R. Crim. P. 44(c) ("Whenever two or more defendants have been jointly charged pursuant to Rule 8(b) . . . ."). We believe it apparent that the reference in Tennessee Rule 44(c) to Tennessee Rule 8(b) is an oversight and was intended to be a reference to Tennessee Rule 8(c). Thus, we conclude that Tennessee Rule 44(c) applies to cases in which there is a joinder of *defendants*, as there is in the case before us.

from the affected defendants.[3]  *Id.* at 163, 108 S. Ct. at 1699.  A panel of this court has prescribed the following procedure for determining whether a defendant waives his right to conflict-free counsel and whether the court should accept the waiver.

> The [defendant] must be present in open court. The parties and the trial court should explain to the [defendant] how an actual or potential conflict may affect him and that the [defendant] has a right to be represented by separate counsel. The [defendant] must be questioned under oath by the parties and the trial court to determine if the [defendant] understands the actual or potential conflict. The [defendant] must state under oath whether he desires to waive the actual or potential conflict.  If the [defendant] states he is willing to waive any actual or potential conflict of interest, the trial court shall permit the [defendant] to be represented by private counsel absent a compelling reason to the contrary.

*Shannon L. Smith v. State*, No. 02C01-9508-CR-00241, slip op. at 7-8 (Tenn. Crim. App., Jackson, Oct. 23. 1997); *see* Tenn. R. Crim. P. 44(c).  That procedure was followed in this case.

At the conclusion of the inquiry in this case, the trial court was persuaded that the defendants "are not aware or do not have the ability to understand the impact that the potential conflict could have on their defenses."  Although the defendants answered all questions favorably to understanding the nature of the potential conflict, the benefits of separate representation, and the desire to proceed with joint counsel, the court expressed "concerns that all defendants were able to understand all of the questions . . . ."  There was a palpable communication barrier in that all four defendants were of Albanian extraction, and three of the four were able to communicate only through an interpreter.  The court cited the "language barrier" as significant in its concern that the defendants did not knowingly and voluntarily waive their rights.  The court had the opportunity to observe the defendants during their responses to questioning and evaluate any non-verbal indications that they may not have fully understood the meaning of their responses.  *See Long v. Tri-Con Indus.*, 996 S.W.2d 173, 178 (Tenn. 1999) (considerable deference must be afforded by appellate court to trial court's findings relative to weight and credibility of witness's testimony, as trial court has opportunity to observe the witness's demeanor and hear the testimony).  In addition, one of the defendants expressed on the record his fundamental lack of understanding of the American judicial process.  In this situation, we are constrained to hold that the trial court did not abuse its discretion in declining to accept the waiver and requiring separate counsel.

---

[3]"The likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict . . . . A few bits of unforeseen testimony or a single previously unknown or unnoticed document may significantly shift the relationship between multiple defendants." *Wheat*, 486 U.S. at 163, 108 S. Ct. at 1699.

In so ruling, we are not holding, nor suggesting that the state can secure disqualification of able defense counsel by simply making different plea offers for different defendants or otherwise manufacturing a conflict. As the high court noted in *Wheat*,

> the Government may seek to "manufacture" a conflict in order to prevent a defendant from having a particularly able defense counsel at his side; but trial courts are undoubtedly aware of this possibility, and must take it into consideration along with all of the other factors which inform this sort of decision.

486 U.S. at 163, 108 S. Ct. at 1699.

Therefore, we affirm the lower court's order requiring that each defendant retain separate counsel.

_____
JAMES CURWOOD WITT, JR., JUDGE